UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALLOYS INTERNATIONAL, INC.          Case No. 1:10-cv-293

    Plaintiff,                     Judge Timothy S. Black

vs.

AERONCA, INC.

    Defendant.

### ORDER THAT DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 36) IS GRANTED IN PART AND DENIED IN PART

This civil case is presently before the Court on Defendant Aeronca, Inc.'s motion for summary judgment (Doc. 36) and the parties' responsive memoranda (Docs. 37& 38). For the reasons stated herein, the motion is **GRANTED IN PART and DENIED IN PART**.

### I. BACKGROUND

Plaintiff Alloys International, Inc. is a New York corporation engaged in the business of marketing specialty metals. (Doc. 1 at ¶¶ 1, 5). Defendant Aeronca, Inc. is an Ohio corporation that manufactures airframe structures and jet engine components for the commercial and defense aircraft industry. (*Id.* at ¶¶ 2, 6). In February 2008, the parties entered into an agreement for Aeronca's purchase of specialty metals from Alloys. (*Id.* at ¶¶ 7-9). On May 7, 2010, Plaintiff brought this action, alleging that Defendant had breached the contract and seeking damages for the purchase price, lost profits, interest charges, storage charges, attorneys' fees, and other direct, incidental, and consequential damages. (*Id.* at ¶¶ 13-14).

A.  **UNDISPUTED FACTS**[1]

1. Alloys and Aeronca entered into an agreement for the sale of a certain amount of specialty metal (the "Contract"). (Doc. 36, Ex. A).

2. The Contract was memorialized in writing as "Purchase Order No. 729649." (Doc. 1 at ¶ 8, Doc. 11 at ¶ 9).[2]

3. Purchase Order No. 729649 identified (a) the amount of specialty metal Aeronca promised to buy from Alloys; (b) the price of the specialty metal that Aeronca promised to buy; and (c) the dates upon which Alloys promised to deliver the special metal to Aeronca. (Doc. 1 at ¶ 9, Doc. 11 at ¶ 10).

4. To fulfill the contract, Alloys would purchase materials from a material supplier, Timet, and then send the materials to Hamilton Precision Metals, Inc. for processing. After processing, Aeronca would receive the finished goods and remit payment to Alloys. (Doc. 36 at 4, Doc. 36, Ex. A at ¶ 2).[3]

5. Aeronca accepted delivery and paid for some of the specialty metal covered under the Contract. (Doc. 1 at ¶ 10, Doc. 11 at ¶ 11).

6. In 2009, a dispute arose as each party's rights and obligations under the Contract. (Doc. 1 at ¶11, Doc. 11 at ¶ 10).

7. Prior to the lawsuit, Aeronca found alternative purchasers for the unprocessed materials purchased from Timet (the two coils). (Doc. 36, Ex. A at ¶ 4).

---

[1] The facts are taken from Defendant's proposed undisputed facts (Doc. 36, Ex. A) and Plaintiff's responses (Doc. 37, Ex. 1) as well as the parties' admissions in their answers (Doc. 11, Doc. 16). Unless otherwise noted, neither party disputes the other party's proposed undisputed fact.

[2] Aeronca admits that Purchase Order No. 729649 comprised a portion of the Contract but denies that it constituted the entire contractual relationship between the parties. (Doc. 11 at ¶ 10).

[3] Alloys admits this fact to the extent that it was Alloys's strategy for fulfilling its obligations under the contract, but denies it to the extent that Aeronca alleges that this strategy was binding on Alloys pursuant to the Contract. (Doc. 37 at ¶ 2).

8. Alloys never charged Aeronca eighteen percent interest under the Contract, and Aeronca never paid interest at eighteen percent under the Contract. (*Id.* at ¶ 5).[4]

9. The only interest rate between the parties is set forth in Alloys's invoices, which is at eighteen percent per annum. (*Id.* at ¶ 7).

10. Aeronca's Terms and Conditions state that each party shall bear its own expenses for mediation. (*Id.* at ¶ 10).

11. Alloys has never provided Aeronca with any evidentiary material supporting its calculation of mediation expenses. (*Id.* at ¶ 11).

## B. Procedural History

Plaintiff Alloys International, Inc. filed suit against Defendant Aeronca, Inc. on May 7, 2010. Plaintiff asserts a claim for breach of contract, and seeks damages in excess of $394,810 for (1) the purchase price of the specialty metal; (2) lost profits on the remainder of the unprocessed specialty metal (the "two coils"); (3) interest charges for material held in inventory; (4) storage charges; (5) attorneys' fees; and (6) other direct, incidental, and consequential damages. (Doc. 1 at ¶¶ 5-14).

Defendant Aeronca filed an answer (Doc. 11) on July 19, 2010, and also asserted a counterclaim against Alloys seeking reformation of the contract and declaratory judgment. (Doc. 11 at ¶ 1-5). Plaintiff filed a timely reply to the counterclaim (Doc. 16) on August 11, 2008.

---

[4] Alloys admits this fact only to the extent explained in ¶¶ 8-9 of the Declaration of Marvin Rubman (Doc. 37, Ex. B). (Doc. 37 at ¶ 5).

-3-

On July 25, 2011, Defendant filed a motion seeking summary judgment (Doc. 36) on Plaintiff's damages claims for (1) lost profits; (2) interest; (3) storage fees; and (4) mediation expenses.[5] (Doc. 36 at 1). Plaintiff filed a response in opposition (Doc. 37) and Defendant filed a reply (Doc. 38).

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

---

[5] Defendant does not seek summary judgment on Plaintiff's claims for breach of contract or for damages resulting from the purchase price of the specialty metal.

-4-

## IV. ANALYSIS

### A. Lost profits

Defendant seeks summary judgment on Plaintiff's claim for lost profits from the remainder of the specialty metal Defendant failed to purchase from Plaintiff on the grounds that Plaintiff previously released and cancelled the claim. (Doc. 36 at 8). Plaintiff contends that Defendant's motion relies on inadmissible evidence, and that even if the evidence were admissible, there is still a genuine issue of fact concerning waiver or renunciation.

#### 1. The evidence is admissible under FRE 408

Alloys argues that Aeronca bases its motion for summary judgment on the lost profits claim on confidential settlement communications, which are inadmissible under Rule 408 of the Federal Rules of Evidence. (Doc. 37 at 3). "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994). Rule 408 provides that conduct or statements made in compromise negotiations are inadmissible to prove "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a). The rule however, permits the use of statements made in settlement negotiations for purposes not prohibited in section (a). *Id.* at (b). Permitted uses include proving a witness's bias or prejudice, negating a claim of undue delay, and proving an effort to obstruct a criminal investigation or prosecution. *Id.*

Here, Aeronca is seeking to introduce statements and emails made by former Alloys Chief Financial Officer Marvin Rubman to prove the existence of a settlement. (Doc. 36 at 8). While the Sixth Circuit has yet to address this issue, the First Circuit has ruled that statements made during settlement negotiations are admissible when offered to enforce the terms of a settlement. *See Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987). In *Catullo*, the court found that settlement discussions were admissible for the purpose of establishing the intent of the parties in reaching the settlement agreement. *Id.* Here, similarly, Aeronca seeks to admit settlement discussions for the purpose of showing that the claim had in fact settled and that Alloys is now barred from bringing it. (Doc. 36 at 8). Such use of settlement discussions is not contrary to Rule 408, and the evidence is therefore admissible for this limited purpose.

### 2. There exists a genuine issue of material fact as to whether Alloys released its claims for lost profits

Prior to the commencement of this lawsuit, the parties engaged in settlement discussions surrounding two elements of damages Alloys alleges it suffered as a result of breach of contract: (1) the purchase price of finished material awaiting shipment to Aeronca; and (2) lost profits on the remaining material to be sold to Aeronca in accordance with the contract (the two coils). (Doc. 37, Ex. 2 at ¶ 4). Aeronca alleges that the parties reached a settlement agreement stipulating that if Aeronca obtained another purchaser for the two coils, Alloys would cancel its order with Timet and release Aeronca from liability. (Doc. 36 at 8). Because the parties reached an agreement, Aeronca argues,

Alloys is now barred from bringing the claim for lost profits. (Doc. 38 at 5). While it is undisputed that Aeronca obtained alternative purchasers for the coils, Alloys contends that the release of liability was contingent upon Aeronca finding alternative purchasers for the two coils *and* Aeronca's purchase of finished material awaiting shipment. (Doc. 37, Ex. 2 at ¶ 6). Because both conditions were not satisfied, Alloys asserts that no settlement was ever reached. (*Id.* at 11).

Ohio law provides that "any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party." Ohio Rev. Code. Ann. §1301.07 (2011). A release of a cause of action for damages "is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 552 N.E.2d 207, 211 (Ohio 1990). Ohio courts have held that the intention of the parties governs in the interpretation of releases. *Whitt v. Hutchison*, 330 N.E.2d 678, 682 (Ohio 1975). An agreement that "the plaintiff will compromise a claim for relief and release a defendant from liability upon the defendant's payment of an amount of money is a contract, and like all contracts requires a meeting of the minds in order to be binding on the parties." *Garrison v. Daytonian Hotel*, 663 N.E.2d 1316, 1318 (Ohio Ct. App. 1995).

Here, Aeronca alleges that the documents exchanged between the parties evidence a clear and unambiguous release by Alloys of any claim for lost damages arising from the two coils, independent of any agreement on the finished material stored at Alloys. (Doc. 38 at 5). Specifically, Aeronca alleges that the release of claims regarding the two coils is

shown through: (1) a June 9, 2009 email from Rubman to John Furbay, stating "If Timet can resell both coils, the problem will just go away" (Doc. 36, Ex. B at 25); (2) Rubman's December 14, 2009 email to John Furbay, stating that "there will be a 100% cancellation charge for the material that we have on the floor and also for the last coil stocked at Timet," and omitting any mention of charges for the previously sold coil (*Id.* at 27); (3) Rubman's February 27, 2010 letter to Furbay, stating the "remaining coils at Timet were still Aeronca's responsibility and the fact that they were eventually sold to others allowed Alloys International to accept cancellations strictly for those coils" and seeking cancellation charges only for the material stored at Alloys (*Id.* at 29-30); and (4) Alloys's March 24, 2010 invoice seeking payment only for the material awaiting shipment, and not for the two coils (*Id.* at 31). Aeronca argues that these communications rebut Alloys's contention that the settlement was a "package deal." (Doc. 38 at 6).

Alloys claims that the record demonstrates that there is a genuine issue of material fact as to whether there was ever a meeting of the minds between the parties and claims that no settlement was ever reached. (Doc. 37 at 6). When repeatedly pressed during his deposition on whether he had ever issued a written cancellation to Aeronca, Rubman stated that he could not remember and never verified any cancellation. (Doc. 35, Ex. 1 at 68-70). Additionally, Rubman claims that Alloys never entered into a knowing and intelligent waiver of its claims against Aeronca for lost profits, nor do any of the documents cited by Aeronca purport to be a full legal tally of all monies owed to Alloys by Aeronca. (Doc. 37, Ex. 2 at ¶¶ 18-19).

-8-

Rubman's affidavit also indicates that when he emailed Furbay that "the problem will just go away," he referred to Alloys obligations to Timet rather than Alloys's lost profits claims against Aeronca. (Doc. 37, Ex. 2 at ¶ 16). Aeronca argues that Alloys is trying to create a genuine issue of material fact by using Rubman's post-deposition affidavit to contradict his deposition testimony. (Doc. 38 at 7, citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997)). However, the Court finds no contradiction between Rubman's testimony and his affidavit. In his testimony, Rubman is asked about his comment that the "problem will go away," with counsel specifically inquiring "And what you are talking about is that the cancellation charges would - -if the order were canceled then Alloys would not have to buy those coils from Timet; isn't that right?." (Doc 35, Ex. 1 at 65). Rubman replies "That's correct." (*Id.*) The Court finds this answer consistent with Rubman's affidavit that "the 'problem' to which I refer is the possibility of Alloys being obligated to purchase metal from Timet" rather than Alloys's lost profits claim. (Doc. 37, Ex. 2 at ¶ 16).

Based on the foregoing facts, the Court finds that there is a genuine issue of material fact regarding whether Alloys waived its lost profits claim against Aeronca. Defendant's motion for summary judgment on Plaintiff's lost profits claim is therefore denied.

**B. Prejudgment interest**

Aeronca also seeks summary judgment on Alloys's claim for prejudgment interest. (Doc. 36 at 9). Alloys claims that it is entitled to interest on the inventory at eighteen percent per annum based upon the invoices that were sent by Alloys to Aeronca. (Doc. 36 at 9). Aeronca asserts that Ohio Rev. Code §1343.03 provides for a statutory prejudgement interest rate unless there is a written contract providing for a different rate of interest, precluding a claim of interest at eighteen percent. (*Id.*).[6]

Alloys argues that its obligations to Aeronca do not fit in any of the categories described in §1343.03 and the statute is therefore inapplicable. (Doc. 37 at 8). The Court disagrees. The plain language of the statute indicates that it applies to damages awarded "upon all judgements, decrees and orders of any judicial tribunal for the payment of money arising out of . . . a contract." Ohio Rev. Code. Ann. §1343.03 (A). Therefore, the rate of any prejudgment interest due on any judgment resulting from Plaintiff's claims before this Court will be determined by §1343.03.

---

[6] Ohio Rev. Code §1343.03 provides:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

While this dispute falls within the parameters of §1343.03, Alloys may still be entitled to interest at eighteen percent per annum if the parties agreed to that rate in an express contract. Ohio Rev. Stat. Ann. §1343.03 (2011). The eighteen percent interest rate is set forth in the invoices sent by Alloys to Aeronca. (Doc. 36 at 9). However, invoices setting forth a prejudgment interest rate do not satisfy the written contract requirement of §1301.03. *Minister Farmers Coop. Exchange Co., Inc. v. Meyer*, 884 N.E.2d 1056, 1061 (Ohio 2008).

Plaintiff's only response to Defendant's argument is that §1343.03 does not apply to this dispute; and Plaintiff has set forth no material facts in dispute on this issue. Because this Court finds that §1343.03 does apply, and that the interest rate set forth in Alloys's invoices does not constitute a written contract under the statute, Defendant's motion for summary judgment on prejudgement interest is granted. Any prejudgment interest due to Plaintiff will be calculated at the statutory rate.[7]

## C. Storage Fees

Defendant seeks summary judgment on Plaintiff's damages claim for storage fees on the grounds that Plaintiff has failed to provide proper computations and evidentiary support. (Doc. 36 at 10-11). Under Rule 26 of the Federal Rules of Civil Procedure, a party is required to provide the opposing party with computations, documents, and

---

[7] Ohio Rev. Code §5703.47 provides that the rate per annum shall be equal to the federal short-term rate on October 15 of the prior calendar year, rounded to the nearest whole number percent, plus three percent.

evidentiary support for each category of damages claimed. *See* Federal Rule of Civil Procedure 26(a)(1)(A)(iii).[8] As the rule states, these disclosures are automatic, and must be provided without awaiting a discovery request. (*Id.*) Moreover, under Rule 37, if a party fails to comply with the disclosure requirements of Rule 26, it may not use that evidence "on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The "sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010).

Plaintiff contends that the deposition testimony of Marvin Rubman provides adequate computations and evidentiary support for the storage claim. (Doc. 37 at 10). This argument is without merit. Rubman testified that the storage claim was calculated using the total space the inventory took up, Alloys's monthly rent charge, and the total time of storage. (Doc. 35, Ex. 1 at 97). However, when asked how much space the inventory occupied, how much space Alloys rents, and the amount of Alloys's monthly

---

[8] Fed. R. Civ. P. 26(a)(1)(A)(iii) states:
  (a) Required Disclosures:
   (1) Initial Disclosure
    (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
     (iii) a computation of each category of damages claimed by the disclosing party - - who must also make available for inspection and copying as under Rule 35 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

-12-

rent, Rubman replied "I can't tell you off the top of my head," "Oh God. I will have to estimate it," and "I really don't know." (*Id.* at 97-98). Alloys informed Aeronca only of the general factors it used to determine the storage cost, but failed to provide any kind of meaningful data or evidentiary support for the total calculation.

Alloys also argues that because Aeronca did not conduct a Rule 30(b)(6) deposition, "no Alloys witness was obligated to come to a deposition prepared to recite every numerical figure used in damages calculations." (Doc. 37 at 10). However, Alloys identified only two employees as people "with discoverable information pertaining to all matters alleged in the Complaint;" and the other identified employee testified in his deposition that Rubman was responsible for the calculation of damages (Doc. 38 at 11). In addition to the questions posed in the deposition, Aeronca requested documentary and evidentiary support for the storage claim in writing on two separate occasions, and Alloys failed to respond each time. (*Id.*). The disclosure requirements of Rule 26 are clear, as is Plaintiff's failure to comply. The vague and ambiguous statements offered in Rubman's deposition do not constitute "evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered" and do not satisfy the stringent disclosure requirements of Rule 26.

Plaintiff claims that even if its disclosures are inadequate under Rule 26, the proper remedy is a motion to compel discovery rather than a motion for partial summary judgment. (Doc. 36 at 10). Sixth Circuit precedent is to the contrary. In *Bessemer*, the

plaintiff failed to make adequate disclosures of its calculations for its loss profits claim despite repeated requests from opposing counsel. *Bessemer*, 596 F.3d at 367. Upon plaintiff's motion for summary judgment, the District Court found that defendant's failure to comply with Rule 26 required the exclusion of any such evidence under Rule 37. (*Id.*). Without any evidence of the computation of the damages, the defendant was entitled to summary judgement. Here, as in *Bessemer*, Plaintiff has failed to comply with the requirements of Rule 26. Plaintiff has offered no evidence that its failure was substantially justified or harmless. Accordingly, any evidence of the calculation of the storage damages is excluded under Rule 37. Because Plaintiff will be unable to present any evidence of a material fact showing a genuine issue for trial, summary judgment is granted against Plaintiff on the claim for storage fees.

### D. Mediation Expenses

Aeronca seeks summary judgment on Alloys's damages claim for mediation expenses on the grounds that the Contract requires each party to bear its own mediation expenses. (Doc. 36 at 12). Plaintiff makes no response to this argument, and has failed to set forth any material facts showing a genuine issue for trial. Accordingly, Defendant's motion for summary judgment on Plaintiff's damages claim for mediation expenses is granted.

### V. CONCLUSION

For the reasons stated herein, Defendant Aeronca's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

1. Defendant's motion for summary judgment on Plaintiff's damages claim for lost profits is **DENIED**;

2. Defendant's motion for summary judgment to determine the interest rate on Plaintiff's damages claim for prejudgment interest is **GRANTED**;

3. Defendant's motion for summary judgment on Plaintiff's damages claim for storage fees is **GRANTED**;

4. Defendant's motion for summary judgment on Plaintiff's damages claim for mediation expenses is **GRANTED**.

**IT IS SO ORDERED.**

Date: 10/17/11

Timothy S. Black
United States District Judge